TENNESSEE ELECTRIC POWER CO. *v.* EDGAR J. GRAHAM *et al.*

*(Nashville.* December Term, 1925.)

1. **TAXATION.**

Corporation *held* entitled to credit on excise tax provided by Acts 1923, chapter 21, for consolidation tax imposed by Acts 1919, chapter 134, in view of Acts 1923, chapter 75, section 10. (*Post, p.* 603.)

Acts cited and construed: Acts 1919, ch. 134, sec. 11; Acts 1923, ch. 21; Acts 1907, ch. 434; Acts 1913, ch. 20; Acts 1915, ch. 131, sec. 18.

2. **LICENSES.** Consolidation tax against corporation held imposed under statute in effect at time of consolidation, though payment was delayed (Acts 1919, chapter 134; Acts 1923, chapter 75).

Where certain corporations were consolidated on July 1, 1922, consolidation tax *held* imposed under Acts 1919, chapter 134, and not under Acts 1923, chapter 75, though payment was delayed until February 18, 1925, because of suit to set aside such consolidation, since tax became due at time of consolidation. (*Post, pp.* 603, 604.)

Acts cited and construed: Acts 1919, ch. 134; Acts 1923, ch. 75.

(599)

3. **TAXATION.** Corporation's payment of consolidation tax, delayed over two years by suit to set aside consolidation, held allowable as credit on exercise tax as of date of payment (Acts 1919, chapter 134; Acts 1923, chapter 21).

Payment of consolidation tax imposed by Acts 1919, chapter 134, which was delayed from August 15, 1922; until February 18, 1925, by suit to set aside consolidation, *held* to be privilege tax paid within twelve months prior to July 1, 1925, and allowable as credit on excise tax payable July 1, 1925, in view of Acts 1923, chapter 21. (*Post, pp.* 604, 605.)

4. **LICENSES.** Comptroller of State held not in position to complain of corporation's delay in paying consolidation tax accruing after anti-trust suit was filed by State to set aside consolidation (Acts 1919, chapter 134, section 16).

Comptroller of State *held* not in position to complain of corporation's delay in paying consolidation tax imposed by Acts 1919, chapter 134, accruing after anti-trust suit was filed by State to set aside consolidation, notwithstanding section 16 of such chapter. (*Post, p.* 605.)

5. **TAXATION.** Corporation's delay of forty-five days in paying consolidation tax held not to prevent allowance of such tax as credit on excise tax (Acts 1919, chapter 134, and section 16 thereof, as repealed by Acts 1923, chapter 83; Acts 1923, chapter 21).

Corporation's delay of forty-five days prior to filing of anti-trust suit to set aside consolidation in paying consolidation tax imposed by Acts 1919, chapter 134, *held* not to prevent allowance of such tax as credit on excise tax imposed by Acts 1923, chapter 21, in view of Acts 1923, chapter 83, repealing Acts 1919, chapter 134, section 16, making such delay misdemeanor. (*Post, p.* 605.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. John R. Aust, Chancellor.

J. M. Anderson and W. E. Norvell, Jr., for appellants.

W. L. Granbery and F. M. Thompson, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

The bill herein was filed to recover from the comptroller of the State $24,758.10 excise tax, paid under protest by the complainant November 9, 1925. The comptroller interposed a demurrer, which was overruled by the chancellor, and an appeal was allowed to this court.

About July 1, 1922, the complainant acquired the properties of certain Tennessee corporations, and thus became liable for a privilege tax imposed by section 11, chapter 134, of the Acts of 1919. This tax is known as "tax on consolidation of corporations." It was ordained by the aforesaid act of 1919 in the following language:

"That whenever hereafter any corporation organized under the laws of this or any other State, foreign or domestic, shall, by lease, purchase, consolidation, or merger, acquire the property of any other corporation having a franchise derived from this State, and shall by virtue of such lease, purchase, consolidation, or merger exercise such franchise, then the corporation on so acquiring such property and exercising such franchise shall pay into the State of Tennessee a privilege tax of one-tenth of one per cent. on the amount of the outstanding capital stock of the corporation whose property and

franchise shall have been so acquired, after such lease, purchase, consolidation, or merger shall have been effected, said privilege tax shall be collected by the secretary of State and by him paid into the treasury.''

Chapter 21 of the Acts of 1923, imposing an excise tax upon corporations and joint-stock associations, in section 2 thereof provides as follows:

''That any corporation or joint-stock association paying the tax hereinabove imposed, shall be entitled to a credit upon the tax herein imposed for the amount paid, in the preceding twelve months prior to July 1st of the year in which this tax becomes due, to the secretary of State under the terms of chapter 434, Acts of 1907, relating to corporations filing certain information with the secretary of State; also to a credit for the amount so paid under chapter 20, Public Acts of 1913, relating to regulation of State banks; insurance companies shall be entitled to a credit for all amounts so paid during the preceding twelve months under section 6, chapter 134, Acts of 1919, known as the General Revenue Bill, and any similar act or acts hereafter enacted; and also under section 18, chapter 131, of the Public Acts of 1915, creating the office of fire prevention commissioner, etc., and corporations or joint-stock associations engaged in mercantile pursuits, and paying the Merchants' Privilege Tax to the State of Tennessee, shall be entitled to a credit for the amount so paid during such preceding twelve months; and all other corporations and joint-stock associations shall be entitled to a credit upon the tax herein imposed for any amount paid to the State for such preceding twelve months under any general revenue bill, as a privilege tax, unless otherwise expressly provided

in the act imposing the privilege tax, provided that the tax herein imposed is a State tax levied for State purposes only and no county or municipality or taxing district shall have power to levy any like tax."

It was the intention of the legislature, by chapter 21 of the Acts of 1923, as appears from section 1, to assess this excise tax upon "the net earnings for their preceding fiscal year of such corporations and joint-stock associations." It appears from section 2 of chapter 21 of the Acts of 1923 that it was intended, in the calculation of net earnings, to allow any corporation or joint-stock association to take credit for any privilege tax paid "in the preceding twelve months prior to July 1st of the year in which this tax becomes due," "unless otherwise expressly provided in the act imposing the privilege tax."

The legislature evidently understood that corporations were entitled to this credit for the consolidation tax imposed by chapter 134 of the Acts of 1919, for when the next general revenue bill, chapter 75 of the Acts of 1923, was passed, and the consolidation tax again assessed in section 10 thereof, it was carefully provided that such tax should "not be a credit upon the tax imposed in chapter 23 (obviously meaning chapter 21), Public Acts of 1923."

Although the consolidation tax for which credit is herein sought, as above stated, was not paid until February 18, 1925, such tax was a tax imposed by chapter 134 of the Acts of 1919, and not by chapter 75 of the Acts of 1923. The consolidation of the corporations was effected July 1, 1922, when the act of 1919 was in force. The tax became due when the consolidation was accomplished. Moreover, the act of 1923 is in terms prospective. It would require a converse expression to make

that act operate retrospectively and assess a tax as of a former year.

After the complainant acquired the other corporations July 1, 1922, on August 15, 1922, the State of Tennessee filed a bill to set aside such merger or consolidation as having been brought about in violation of the Tennessee anti-trust statute. This litigation continued in the courts for something over two years, and was finally determined adversely to the State by this court at the December term, 1924. Shortly thereafter, when the consolidation had been declared legal, the consolidation tax was paid, that is, on February 18, 1925. Such tax so paid was, therefore, a privilege tax, paid within twelve months prior to July 1, 1925, not denied credit on the excise tax by the act imposing it, for which, under the express provisions of chapter 21 of the Acts of 1923, the complainant was entitled to be credited on its excise tax payable July 1, 1925. This is true unless complainant is to be repelled for the reason now to be stated.

It is insisted by the comptroller that this consolidation tax was due the State when the corporations were merged July 1, 1922; that under section 16 of chapter 134 of the Acts of 1919 it was a misdemeanor to exercise any of the privileges prescribed by that act without paying the privilege tax; and that complainant, having carried on the consolidated corporation without payment of the tax for forty-five days after the tax became due, before the anti-trust suit was filed, and thereafter, cannot under such circumstances have relief. The maxims *ex turpi causa non oritur actio* and *ex dolo malo non oritur actio* are invoked, as well as those cases holding

that brokers and others who have not paid their privilege taxes cannot recover their commissions, etc.

We think the comptroller is not in a position to make any point on the delay accruing after the anti-trust suit was filed, while the State was assailing the validity of the consolidation. As to the default between the accrual of the tax and the bringing of said suit, some forty-five days, any fraud or turpitude which might otherwise inhere in that omission and affect complainant's right to relief is removed by chapter 83 of the Acts of 1923. That act declares valid and enforceable contracts made by persons who have failed to pay their privilege tax, provided they shall have paid the tax before any suit is brought upon such contracts, and section 3 is in these words:

"That section 16 of chapter 134 of the Acts of 1919, making it a misdemeanor to exercise a privilege without first paying the privilege tax is hereby repealed and that this repeal shall be applicable to all violations of said section occurring prior to the passage of this act."

The complainant, having settled its consolidation tax with the fiscal officers of the State before this suit was brought, should not be turned away by the court on account of a default which the legislature has by solemn act forgiven.

The complainant claims another credit on its excise tax for 1924 which it is not necessary to consider. The amount of the excise tax, as above noted, was $24,758.10. The amount of the consolidation tax for which the complainant is entitled to credit was $30,000. Since the consolidation tax exceeds the excise tax, the other claim for credit becomes of no consequence.

The decree of the chancellor will be affirmed.